UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MONOHAR SHARMA,

                        Plaintiff,

          -against-

JOHN E. POTTER, Postmaster General, and
the UNITED STATES POSTAL SERVICE,

                       Defendants.
----------------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**

06 Civ. 4448 (GAY)

Plaintiff Monohar Sharma is employed by the United States Postal Service ("USPS"). Plaintiff alleges that the USPS discriminated against him because of his disability, in violation of the Rehabilitation Act of 1973 (29 U.S.C. §§ 791, 794 and 794a) ("Rehabilitation Act"). Presently before this Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").[1] For the reasons set forth below, defendants' motion is granted.

**I. BACKGROUND**

The following facts–taken in the light most favorable to plaintiff–are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions. Any disputes of material fact are noted.

Plaintiff began his employment with the USPS in 1995, as a rural carrier

---

[1] This motion is before me on the consent of the parties, pursuant to 28 U.S.C. §636(c).

associate at the Clifton Park Post Office, located approximately ten miles from his home in Niskayuna, New York. In July 2001, plaintiff became a "rural carrier PTF," a part-time flexible position with the same duties along with full benefits. The duties of a rural carrier include sorting mail, receiving mail, loading mail in a vehicle, delivering mail to customers along a route by vehicle, picking up mail from customers' roadside boxes and returning collected or undeliverable mail to the post office. Rural carriers are required to lift large tubs of mail into and out of trucks and mailboxes, and to walk, stand and bend throughout a shift. Accordingly, the USPS requires rural carriers to be able to: lift up to seventy pounds; carry forty-five pounds; walk, push and stand for up to eight hours a day; and to pull, bend and reach above the shoulder on a consistent basis.

On August 30, 2001, plaintiff injured his hip in a motor vehicle accident that occurred while he was delivering mail. In January 2002, plaintiff lost consciousness and hit his head on a marble floor. As a result, he underwent brain surgery on February 28, 2002. Four months later, plaintiff was allowed to return to work subject to the following medical restrictions: he could lift no more than twenty pounds, and could engage in only limited standing, sitting, bending, twisting, driving and walking.

The Department of Labor thereafter determined that plaintiff was eligible for injury compensation benefits. When a USPS employee is found eligible for compensation benefits due to an on-the-job injury, the USPS is obligated to make every effort to assign the employee to a limited duty position consistent with the employee's medically defined work limitation tolerance. Because a limited duty job is designed to meet the employee's medical restrictions, it does not always correspond to a preexisting USPS position. Thus, a limited duty position may be a "make work" job consisting of minor

duties, expressly created for someone who is unable to perform an existing job and who would otherwise remain home and collect injury compensation benefits. Each limited duty position is unique in that it is created for a specific injury compensation employee; the limited duty position, therefore, ceases to exist once that employee leaves the USPS or becomes able to perform his original job. Accordingly, unlike standard positions such as rural carriers or Sales, Service and Distribution Associates ("SSDA"), limited duty positions are never vacant or available for other employees to transfer into.

On or about July 18, 2002, based upon plaintiff's medical restrictions, the Albany District offered (and plaintiff accepted) a limited duty position at the Clifton Park Post Office. The limited duty position consisted of clerical office work such as answering the phone and handling missent mail, as well as other duties assigned by the postmaster, such as delivering express mail, checking for test-delivery confirmation labels and distributing trays of mail to mail carriers.

In February 2003, plaintiff's wife lost her job at a nursing home in Clifton Park. Although plaintiff encouraged his wife to find a job near their home in Niskayuna, she decided to take a job at a nursing home in Beacon, New York, more than a hundred miles away. Because she was afraid to drive long distances on the highway, plaintiff's wife moved to Wappinger Falls, New York, leaving plaintiff to live alone in Niskayuna. By letter dated May 22, 2003, plaintiff requested a transfer to a post office in or around Wappinger Falls. In the letter, plaintiff explained that his wife had moved and that he had no help available at his house in case of emergencies. Plaintiff thereafter sent a copy of his test scores for the rural carrier and SSDA positions, as well as several letters urging action on his request.

On August 9, 2003, the Albany District office again offered (and plaintiff again accepted) a limited duty position at the Clifton Park Post Office, tailored to plaintiff's specific medical limitations (lifting/carrying and pushing/pulling up to twenty pounds). By letter dated July 14, 2004, plaintiff's transfer request was denied. In August 2004, the Albany District transferred plaintiff's limited duty position to Athens, the southernmost post office in the District, and plaintiff moved to Wappinger Falls, sixty-five miles away.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP 56(e).

When deciding a summary judgment motion, the court must "'resolve all ambiguities and inferences . . . in the light most favorable to the party opposing the motion.'" Neratko v. Frank, 31 F. Supp. 2d 270, 278 (W.D.N.Y. 1998) (quoting Shockley v. Vermont State Colleges, 793 F.2d 478, 481 (2d Cir. 1986)). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. Gallo

v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

## III. REHABILITATION ACT: FAILURE TO ACCOMMODATE

Plaintiff alleges that the USPS discriminated against him on the basis of his disability, in violation of the Rehabilitation Act, when it denied his transfer request. In order to establish a prima facie case of employment discrimination for failure to accommodate under the Rehabilitation Act, plaintiff must demonstrate that: (1) he was an individual with a "disability" within the meaning of the statute; (2) the USPS was subject to the statute and had notice of his disability; (3) he was "otherwise qualified" for the position sought, i.e., that with reasonable accommodation, he could perform its essential functions; and (4) the USPS has refused to make such accommodation. See Young v. Central Square Cent. Sch. Dist., 213 F. Supp.2d 202, 212 (N.D.N.Y. 2002). For purposes of the instant motion, the first two elements are undisputed; plaintiff's claim, therefore, turns on whether he was otherwise qualified for the position he sought and whether the USPS failed to provide a reasonable accommodation for his disability.

Plaintiff concedes that, without accommodation, he was physically unable to perform the essential functions of either a postal carrier or SSDA because of his medical limitations. Plaintiff also concedes that the USPS accommodated his disability by creating a limited duty position in Clifton Park. Plaintiff alleges, however, that the USPS discriminated against him by denying his request to transfer to a post office near

5

Wappinger Falls. Plaintiff does not dispute that each limited duty position is unique in that it is created for a specific injury compensation employee and, therefore, ceases to exist once that employee leaves the USPS or becomes able to perform his original job. Accordingly, plaintiff does not dispute that limited duty positions are never vacant or available for other employees to transfer into. Plaintiff also concedes that "an employer need not create a new job in order to accommodate a disabled employee." See Lipka v. Potter, No. 03CV381A, 2006 WL 839421, at *7 (W.D.N.Y. Mar. 28, 2006).

Notwithstanding, plaintiff argues that the USPS failed to provide reasonable accommodation because it refused to restructure the SSDA position in Wappinger Falls by taking "light jobs" from other SSDAs and assigning those light duties to him. Although a reasonable accommodation may include job restructuring, "[a] reasonable accommodation can never involve the elimination of an essential function of a job." See Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003). Here, defendants contend that the essential functions of the SSDA position include the ability to lift up to seventy pounds, to carry forty-five pounds, to walk and stand for up to eight hours a day and to pull, bend and reach above the shoulder on a consistent basis. Plaintiff proffers no evidence to the contrary. Thus, plaintiff's requested accommodation–assigning to him only the "light duties" of an SSDA consistent with his medical limitations–would eliminate the essential functions of the SSDA position. Plaintiff, therefore, fails to establish his prima facie case because he proffers no evidence which would demonstrate that he was "otherwise qualified" for the position he

6

evidence which would demonstrate that he was "otherwise qualified" for the position he sought. Accordingly, defendants' motion for summary judgment is granted.[2]

## IV. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is **GRANTED** and plaintiff's claims are dismissed.

The Clerk of the Court shall enter judgment accordingly.

Dated: February 14, 2008
White Plains, New York

**SO ORDERED:**

GEORGE A. YANTHIS, U.S.M.J.

---

[2] In any event, plaintiff does not allege that his current position–created specifically for him pursuant to the federal workers compensation program–negatively impacts his salary or benefits. "When an employer offers an employee an alternative position that does not require a significant reduction in pay and benefits, that offer is 'reasonable accommodation' virtually as a matter of law." Guice-Mills v. Derwinski, 967 F.2d 794, 798 (2d Cir. 1992). While plaintiff would prefer to move this position closer to his home, "no employee has the 'right' to insist that he work in a particular job and there is no requirement under the Act that USPS must place plaintiff in the job of his choice." See Trobia v. Henderson, 315 F. Supp.2d 322, 333 (W.D.N.Y. 2004).